UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Nicole Beltran-Andrade,

    Plaintiff,

v.

FourCrown, Inc. d/b/a Wendy's
and FourCrown II, Inc. d/b/a/Wendy's,

    Defendants.

**COMPLAINT**
**(Jury Trial Demanded)**

Court File No. _____

---

Plaintiff, Nicole Beltran-Andrade, for her Complaint against Defendants states and alleges as follows:

## **PARTIES**

1. Plaintiff is a resident of the City of Mahtomedi, State of Minnesota.

2. Defendant FourCrown, Inc. is a foreign corporation of Wisconsin doing business at 7002 6th Street North Oakdale, MN 55128, Washington County.

3. Defendant FourCrown II, Inc. is a domestic corporation of Minnesota doing business at 7002 6th Street North Oakdale, MN 55128, Washington County.

4. During all relevant times herein, Plaintiff was an "employee" of FourCrown, Inc. and/or FourCrown II, Inc. within the meaning of 42 U.S.C. § 2000e(f) and Minn. Stat. § 363.01 (16). FourCrown, Inc. and/or FourCrown II, Inc. were her "employer" within the meaning of 42 U.S.C. § 20002(b) and FourCrown, Inc. and/or FourCrown II Inc. were her "employer" within the meaning of Minn. Stat. § 363.01(17).

1

## JURISDICTION

5. Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et. seq. (2003). As such, jurisdiction is proper under 28 U.S.C. § 1331 (2003).

6. Plaintiff brings additional claims under the Minnesota Human Rights Act, Minn. Stat. § 363A.01 et. seq. (2003). As such, jurisdiction is proper for those claims under pendent jurisdiction. 28 U.S.C. § 1367 (2003).

7. Venue is proper under 28 U.S.C. § 1391 because the unlawful practices described herein have been committed in the District of Minnesota.

## FACTS COMMON TO ALL COUNTS

8. Plaintiff began working as a general manager at a Wendy's store located in St. Paul, MN in or around March, 2003. The store where Plaintiff worked in March of 2003 was owned by Wendy's International, a foreign corporation of Ohio.

9. In or about February, 2004 Plaintiff began working at the Wendy's store located at 1251 Industrial Blvd. in Minneapolis, MN 55413. In February 2004 the Industrial Boulevard Store was owned by Wendy's International, Inc..

10. In July 2004, Plaintiff was promoted to the position of Training Store Manager.

11. In or around March 2006, the International Boulevard Store was sold to FourCrown, Inc. and/or FourCrown II, Inc. as part of a Wendy's franchise.

12. As a training store manager, Plaintiff was responsible for training new managers, making the schedule for the store, and supervising other employees who were working the same shift she was.

13. Despite her title of "training store manager," Plaintiff had no independent authority to discipline, reprimand, hire or fire anyone at her store who had attained the assistant manager level.

14. On the shifts where Plaintiff was not scheduled to work, the assistant managers were in charge of supervising the routine operations of the store and had the authority to send other employees home.

15. If the store was short-staffed on a shift where Plaintiff was not otherwise scheduled to work, it was expected that Plaintiff would come in to work to cover the shift.

16. Plaintiff received numerous awards during the course of her employment with Wendy's.

17. Plaintiff was also featured in several Wendy's training videos.

18. Plaintiff continued working as a training store manager for FourCrown, Inc.

19. In January, 2007, Wael Aziz, an assistant manager, was transferred to the Industrial Boulevard store.

20. Prior to the transfer, Mr. Aziz had worked as an assistant manager at the Coon Rapids Wendy's.

21. When Mr. Aziz was transferred to the Industrial Boulevard store, Plaintiff inquired of the general manager for whom Mr. Aziz's had previously worked as to why he had been transferred.

22. Mr. Aziz's previous general manager said the reasons for his transfer were "confidential" but that she was "glad" that Mr. Aziz was now Plaintiff's "problem."

23. In April 2007, Mr. Aziz began to sexually harass Plaintiff.

24. After the first incident of sexual harassment, which involved Mr. Aziz groping Plaintiff's buttocks, Plaintiff changed the work schedule at the store so she and Mr. Aziz would work on different shifts.

25. Mr. Aziz then began coming in to work early and harassing Plaintiff at the end of her shift.

26. Mr. Aziz also manufactured conflicts with employees who worked the shifts when he was the highest ranking manager on duty. He would then send those employees home and contact Plaintiff, telling her that she had to come in to work because he did not have enough staff to cover the shift.

27. When Mr. Aziz would come to work early or would call Plaintiff into work on his shift, he continued to sexually harass Plaintiff. This sexual harassment included, but was not limited to:

   a. Mr. Aziz touched Plaintiff's buttocks;

   b. Mr. Aziz put his hand down the back of Plaintiff's uniform pants, grabbed her underwear, and pulled her underwear up;

   c. Mr. Aziz repeatedly gave Plaintiff unsolicited and unwanted "shoulder rubs" despite her requests that he stop touching her;

   d. Mr. Aziz referred to Plaintiff as "gay girl";

   e. While grinding his genitals on Plaintiff's buttocks Mr. Aziz asked Plaintiff "how do you like my gun?";

  f. Mr. Aziz told Plaintiff to "watch her back" and that as someone who has five kids she better "watch her back";

  g. Mr. Aziz asked Plaintiff to go home with him;

  h. Mr. Aziz told Plaintiff she had a "nice ass";

  i. Mr. Aziz Repeatedly made comments about how Plaintiff's body looked in her uniform pants; and

  j. Mr. Aziz would make comments in Plaintiff's presence in Arabic (Mr. Aziz's native language) which Plaintiff believes translated to "nice ass."

28. Throughout her employment Plaintiff reported Mr. Aziz's actions multiple times to her district manager, human resources, and the Operations Manager.

29. In addition to making verbal reports, Plaintiff also tried to provide written reports of Mr. Aziz's behavior.

30. On at least one occasion, Plaintiff's written complaint was returned to her because it was purportedly not "good enough."

31. After Mr. Aziz put his hand down Plaintiff's pants and pulled her underwear up, Plaintiff contacted her district manager, human resources, and the Operations Manager to notify them about his conduct.

32. In response to Plaintiff's complaint, the Operations Manager told Plaintiff that since she was the manager, she "should be able to handle [her] own fucking problems."

33. In response to Plaintiff's complaint, human resources told her that it was her fault for coming to work looking like a "beauty queen."

34. In response to Plaintiff's complaint, she was told that she had become a "problem manager."

35. In or around May 2007, Plaintiff was constructively discharged, as she could no longer tolerate the harassment and Defendants altogether refusal to take any action to address the harassment.

## CAUSES OF ACTION

## COUNT I

## SEX DISCRIMINATION PURSUANT TO 42 U.S.C. § 2000e-2

36. By reference hereto, Plaintiff incorporates Paragraphs 1-35 above.

37. Plaintiff and Defendants herein named are employee and employer respectively for purposes of the definition set forth in 42 U.S.C. § 2000e et seq. (2003).

38. 42 U.S.C. § 2000e-2(a)(1) provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…sex…"

39. The unwelcome conduct that Plaintiff was subjected to substantially interfered with Plaintiff's employment and created an intimidating, hostile, and offensive work environment. This conduct was sexual harassment in direct violation of 42 U.S.C. § 2000e et seq. (2003). Defendants knew or should have known of the existence of the harassment and failed to take timely and appropriate action.

40. As a result of Defendants' violations of 42 U.S.C. § 2000e et seq., and the failure to properly address the improper conduct, Plaintiff has suffered past and present loss of income, mental anguish, humiliation, embarrassment, loss of reputation, and other

pain and suffering in an amount in excess of $75,000.

41. Defendants committed the above-alleged facts with malice, reckless disregard or deliberate disregard for the rights and safety of Plaintiff. As a result thereof, Plaintiff is entitled to punitive damages in excess of $75,000.

## COUNT II

## SEX DISCRIMINATION PURSUANT TO MINN. STAT. § 363A.08

42. By reference hereto, Plaintiff incorporates paragraphs 1-41 above.

43. During the course of Plaintiff's employment, Defendants discriminated against her with respect to the terms, conditions, and privileges of her employment and their actions, therefore, constitute an unfair employment practice against her in violation of Minn. Stat. § 363A.08(2)(c) (2003).

44. Minn. Stat. § 363A.08(2)(c) provides that it is unlawful for an employer "because of sex…to discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities or privileges of employment."

45. Sex discrimination under Minn. Stat. § 363A.08 includes sexual harassment as defined by Minn. Stat. § 363A.03(43) (2003).

46. Minn. Stat. § 363A.03 (43) states:

> Sexual harassment includes unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other verbal or physical conduct or communication of a sexual nature when:
>
> > (2) submission to or rejection of that conduct or communication by an individual is used as a factor in decisions affecting that individual's employment…
> >
> > (3) that conduct or communication has the purpose or effect of

substantially interfering with an individual's employment...or creating an intimidating, hostile, or offensive employment.

47. Plaintiff's submission to or rejection of Mr. Aziz's conduct or communication was used as a factor in decisions affecting Plaintiff's employment, in violation of Minn. Stat. § 363A.03(43).

48. The unwelcome conduct that Plaintiff was subjected to substantially interfered with Plaintiff's employment and created an intimidating, hostile and offensive work environment. This conduct was sexual harassment for purposes of Minn. Stat. § 363A.03(43).

49. As a result of the conduct in violation of Minn. Stat. § 363A.08 and the failure to properly address the improper conduct, Plaintiff has suffered loss of income, mental anguish, humiliation, embarrassment, loss of reputation and other damages in an amount in excess of $75,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Nicole Beltran, prays for judgment against Defendants as follows:

1. That the practices of Defendants complained of herein be determined and adjudged to constitute discrimination in direct violation of Title VII, 42 U.S.C. § 2000e and Minn. Stat. § 363A.03 et seq.;

2. That Plaintiff be awarded all relief available under Title VII, 42 U.S.C. § 2000e and the Minnesota Human Rights Act, Minn. Stat. § 363A.03 et seq., including an amount equal to three times her lost salary and fringe benefits pursuant to Minn. Stat. § 363A.29 each in amounts to be determined at trial, with interest on such amounts;

3. For compensatory damages for mental anguish and emotional distress in an amount in excess of $75,000;

4. For an award to Plaintiff of her attorney's fees and the costs of this action, pursuant to Title VII, 42 U.S.C. § 2000e and Minn. Stat. § 363A.33(7);

5. For a civil penalty against Defendants pursuant to Minn. Stat. § 363A.29; and,

6. For such other and further relief as the Court deems just.

Date: 6/18/07

NICHOLS KASTER & ANDERSON, PLLP

Steven Andrew Smith #260836
E. Michelle Drake #0387366
80 South Eighth Street
4600 IDS Center
Minneapolis, MN 55402-2242
Telephone: (612) 256-3200

ATTORNEYS FOR PLAINTIFF